IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(Eastern Division)

| | |
|---|---|
| VINCENT AMBROSIA, JR. and ROBERT HOUPT, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>BLAZESOFT LTD., BLAZEGAMES, INC., SSPS LLC d/b/a SPORTZINO, SCPS LLC d/b/a ZULA CASINO, and SOCIAL GAMING LLC d/b/a FORTUNE COINS,<br><br>  Defendants. | Case No.: 1:25-CV-01723-MFK-MV |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS BLAZESOFT LTD. AND BLAZEGAMES, INC.'S
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Defendants Blazesoft Ltd. ("Blazesoft") and Blazegames, Inc. ("Blazegames") respectfully submit this memorandum in support of their motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## **INTRODUCTION**

Blazesoft and Blazegames have no connection to Illinois. Blazesoft is a Nova Scotia limited company with its headquarters in Ontario. Blazegames is a Delaware corporation that acts as a holding company. Neither company has offices, facilities, or any other assets in Illinois. They do not employ Illinois residents. They are not registered to do business in Illinois. They do not have registered agents for service of process or maintain any business records there. They have never directed any of their activity toward the Illinois market. They could not—and did not—expect to be dragged into court in Illinois.

But that is where they find themselves. Plaintiffs bring multiple claims against Blazesoft and Blazegames. Yet all of Plaintiffs' claims arise out of their use of platforms operated by Blazesoft and Blazegames' subsidiaries: SSPS LLC ("Sportzino"), SCPS LLC ("Zula"), and Social Gaming LLC ("Fortune Coins"). To establish jurisdiction over Blazesoft and Blazegames, Plaintiffs must convince the Court to disregard the fact that Blazesoft and Blazegames are separate from each other and their subsidiaries. The Court should decline to do so.

While the conduct of a subsidiary may confer jurisdiction over a parent in unusual cases, the general rule is that it cannot. This case is not unusual. The relationship among Blazesoft, Blazegames, and the subsidiaries reflect typical parent-subsidiary relationships. All five companies are separate legal entities that observe the required formalities. They keep separate books and records and maintain separate bank accounts. They have the registered offices and registered agents required by statute. And while Blazesoft provides certain services to Sportzino,

1

Zula, and Fortune Coins, it does not exercise an unusually high degree of control over any of them. There is therefore no basis to impute the subsidiaries' contacts with Illinois to Blazesoft. The same is true of Blazegames, which acts as a holding company.

Accordingly, this Court does not have personal jurisdiction over Blazesoft or Blazegames. Plaintiffs' claims against them must therefore be dismissed.

## STATEMENT OF FACTS

Sportzino, Zula, and Fortune Coins (the "Operators") each operate a social gaming platform that allow users to play a wide range of entertaining casino-style games using virtual tokens. Declaration of Yuliy German ("German Decl.") ¶¶ 11, 15. Each of the Operators is a Delaware limited liability company, directly owned by Blazegames, a Delaware corporation that serves as a holding company for the Operators. German Decl. ¶¶ 4, 9–10. Blazegames is a wholly owned subsidiary of Blazesoft, a Nova Scotia limited company headquartered in Ontario, Canada. *Id.* ¶¶ 3–4. Neither Blazesoft nor Blazegames have offices, facilities, assets, or employees in Illinois. *Id.* ¶ 5. They are not registered to do business in Illinois. *Id.* ¶ 6. They do not have registered agents for service of process or maintain any business records there. *Id.* They have never specifically directed their efforts, including marketing, toward the Illinois market. *Id.* ¶ 5.

Plaintiffs allege that the Operators are sham entities. *See* First Am. Compl. ("FAC") ¶ 27, ECF No. 27. To support these allegations, Plaintiffs assemble a handful of marketing statements that, in their view, show that Blazesoft, not the Operators, operate the platforms. *See* FAC ¶¶ 20, 22–26.

All of these statements simply reflect the fact that the Operators are part of the Blazesoft corporate group. Even the statements Plaintiffs cite make this clear. For example, the press release announcing the launch of Sportzino noted that Blazesoft is the "parent company of Sportzino."

FAC ¶ 24. In that same press release, a Blazesoft executive went on to state that Sportzino's launch was a "significant milestone for Blazesoft group." *Id.* Plaintiffs also note that Blazesoft employees and executives promote the Operators on their LinkedIn profiles, and that one Blazesoft employee describes himself as the "Head of Sportzino". *Id.* ¶¶ 33–38. Taken together, these allegations reflect nothing more than the fact that Sportzino, like Zula Casino and Fortune Coins, are members of the Blazesoft corporate group. *Id.* ¶¶ 3–7.

As in many corporate groups, each entity plays a specific role. The Operators operate the platforms. German Decl. ¶¶ 12–14. Blazegames serves as a holding company. *Id.* ¶ 9. Blazesoft provides certain services to the Operators from its Ontario offices. *Id.* ¶ 22; *see* FAC ¶¶ 30–31. These services include accounting services, treasury support services, information system support services, information, advice and assistance related to marketing and delivery programs, and legal services. German Decl. ¶ 23; FAC ¶ 30. Blazesoft also sublicenses certain software to each of the Operators. German Decl. ¶ 24; *see* FAC ¶ 31. The terms of each of the agreements reflect arm's-length transactions between Blazesoft and each of the Operators. German Decl. ¶¶ 23–24. Under the agreements, Blazesoft invoices the Operator, and the Operator records its payments to Blazesoft in its books. *Id.* ¶ 25. Neither Blazesoft nor Blazegames has authorized any of the Operators to act on its behalf or represented any such authority to a third party. *Id.* ¶ 26. None of the agreements between Blazesoft and the Operators permit either party to contract for or bind the other in any way. *Id.* ¶ 27.

The Operators are not "sham" entities. They have a separate legal existence from each other and their parent companies. German Decl. ¶¶ 8–10. They are solvent and adequately capitalized. *Id.* ¶ 17. They maintain separate books, records, and finances. *Id.* ¶ 18. Each Operator maintains

its own separate bank account, as do Blazesoft and Blazegames. *Id.* ¶ 21. And the Operators, not Blazesoft or Blazegames, operate the platforms with which Plaintiffs take issue. *See id.* ¶¶ 12–14.

## ARGUMENT

The Court must dismiss a complaint where it lacks personal jurisdiction over the defendants. *See* Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of establishing personal jurisdiction. *Tamburo*, 601 F.3d at 701. While the Court will draw reasonable inferences in Plaintiffs' favor, because Blazesoft and Blazegames have submitted evidence in support of their motion to dismiss, Plaintiffs "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Federal courts ordinarily follow state law to determine whether personal jurisdiction exists. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). Illinois law permits the exercise of jurisdiction to the full extent permitted by the Due Process Clause. 725 ILCS 5/2-209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The "key question" is therefore whether each defendant has "sufficient minimum contacts with Illinois such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 700 (internal quotation marks omitted). Personal jurisdiction must be established independently for each defendant. *See Kinslow v. Pullara*, 538 F.3d 687, 692–93 (7th Cir. 2008). Depending on the extent of the defendant's contacts with Illinois, a court may have either general (or "all-purpose") or specific (or "claim-linked") jurisdiction. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). Here, the Court has neither.

**I.      The Court must dismiss the claims against Blazesoft and Blazegames—two companies with no connection to Illinois—for lack of personal jurisdiction.**

The Court lacks personal jurisdiction over Blazesoft and Blazegames because neither company has any connection to Illinois and has never purposefully directed its activity at the Illinois market. In an apparent effort to establish jurisdiction over Blazesoft and Blazegames, Plaintiffs ask the Court to disregard the fact the Operators operate the platforms at issue—not Blazesoft or Blazegames. *Compare* FAC ¶ 18 (alleging that Blazesoft operates the platforms), *with* German Decl. ¶¶ 11–14 (Operators operate platforms). The Court should not do so. The relationship among Blazesoft, Blazegames, and the Operators reflects common features of parent-subsidiary relationships. There is therefore no reason to ignore each Defendant's separate existence and attribute whatever contacts with Illinois the Operators have to Blazesoft and Blazegames. And because neither company has sufficient contacts with Illinois on its own, the Court lacks personal jurisdiction over them. The Court must therefore dismiss Plaintiffs' claims against Blazesoft and Blazegames.

**A. The Court cannot consider the Operators' contacts with Illinois in determining whether it has personal jurisdiction over Blazesoft and Blazegames.**

The general rule is that jurisdiction over a subsidiary is not enough to confer jurisdiction over an out-of-state parent company. *Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012). Due process "requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Accordingly, two exceptions to the general rule permit a court to exercise jurisdiction over a parent based on a subsidiary's activities: (1) where there is some basis for piercing the corporate veil or

5

(2) where the parent exerts an unusually high degree of control over the subsidiary. *See KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013); *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 736 (N.D. Ill. 2011) (quoting *Central States*, 230 F.3d at 944). Neither exception applies here.

### i. There is no basis to pierce the veil of the Operators.

There is no basis to pierce the veil here. Illinois law treats a parent company as a separate legal entity from a wholly owned subsidiary, "even where the two entities have mutual dealings." *Old Orchard Urban Limited Partnership v. Harry Rosen, Inc.*, 904 N.E.2d. 1050, 1061 (Ill. App. 1st Dist. 2009).[1] A court may pierce the veil "only where the subsidiary is so controlled, and its affairs so conducted by the parent that observance of the fiction of separate identities would sanction a fraud or promote injustice." *Id.* Before determining whether a plaintiff has shown fraud or injustice, courts first determine whether there is "a unity of interest and ownership such that the separate identities of the entities are nonexistent." *Id.* To do so, courts consider several factors, including:

> (1) whether the corporation has failed to maintain adequate corporate records or to comply with corporate formalities; (2) whether the other defendants have commingled the corporation's funds or assets; (3) whether the corporation was undercapitalized; and (4) whether the other defendants have treated the assets of the corporation as their own.

---

[1] In cases determining whether veil-piercing can confer personal jurisdiction over out-of-state entities, Illinois federal courts differ on whether to apply the law of Illinois or the law of the jurisdiction of formation. *See e.g.*, *Schoeps v. Sompo Holdings, Inc.*, 736 F. Sup. 3d 582, 598 n.4 (N.D. Ill. 2024) (applying law of country of incorporation); *Poulsen Roser A/S v. Jackson & Perkins Wholesale, Inc.*, No. 10 C 1894, 2010 WL 3419460, at *3 (N.D. Ill. Aug. 26, 2010) (applying Illinois law). Courts analyze similar factors under both Illinois and Delaware law. *See e.g.*, *Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Delaware, Inc.*, 75 F. Supp. 3d 883, 896 (N.D. Ill. 2014) (analyzing capitalization and solvency, compliance with corporate formalities, "siphoning" of company funds, and whether company was a mere façade for controlling shareholder). Delaware law also requires a plaintiff to establish that the corporation has "created a sham entity designed to defraud investors and creditors." *Id.* Because Plaintiffs cannot demonstrate that veil-piercing is warranted under Illinois law, they likewise could not do so under Delaware law.

*Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029, 1040 (N.D. Ill. 2003); *see also Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 866 (N.D. Ill. 1998) (evaluating these factors as part of personal jurisdiction analysis). None of these factors are present here.

As for the first factor, the Operators maintain adequate corporate records and have observed the relatively few formalities required of limited liability companies: they maintain a registered office in Delaware, have a registered agent for service of process there, and maintain membership lists and tax returns. German Decl. ¶ 19. They keep separate books and records and maintain separate bank accounts. *See id.* ¶ 18. Blazegames too adheres to corporate formalities: it maintains a registered office and registered agent in Delaware and holds shareholder and board meetings as required by statute. *See id.* ¶ 20. This factor therefore cannot support veil piercing here. *See Gruca*, 19 F. Supp. 2d at 869.

The second factor is also absent. Neither Blazesoft nor Blazegames commingle finances or assets with those of each other or those of the Operators. All five companies—Blazesoft, Blazegames, Zula, Sportzino, and Fortune Coins—maintain separate bank accounts, books, records, and finances. German Decl. ¶¶ 18, 20. To the extent that the Operators use Blazesoft's assets, they do so under arm's-length intercompany agreements. *Id.* ¶¶ 22–25. Plaintiff's allegation that the alleged "Head of Sportzino" identifies himself as a Blazesoft employee likewise falls far short of demonstrating a "commingling" of assets that could justify veil-piercing. *See Firstar Bank*, 249 F. Supp. 2d at 1040 (citing *Papa v. Katy Indus.*, 166 F. 3d 937, 943 (7th Cir. 1999)). The integration of workforces and functions does not trigger veil-piercing. *See id.* The second factor therefore does not support piercing the veil. *Gruca*, 19 F. Supp. 2d at 868.

As for the third factor, Blazegames and the Operators are adequately capitalized and solvent, German Decl. ¶¶ 17–18, and Plaintiffs do not seriously allege otherwise. Nowhere in the

7

complaint do Plaintiffs allege, for example, that the Operators have "so little money" that they cannot and do not actually operate their businesses on their own. *See Firstar Bank*, 249 F. Supp. 2d at 1041 (quoting *Browning-Ferris Indus. of Ill., Inc. v. Ter Maat*, 194 F.3d 953, 961 (7th Cir. 1999)). They merely allege, with no factual support, that Blazegames and the Operators lack "independent" assets. *See* FAC ¶ 19. But that is not true—the Operators have separate bank accounts and are solvent. German Decl. ¶¶ 17–18, 21. This factor therefore does not support piercing the veil. *See Firstar Bank*, 249 F. Supp. 2d at 1041.

Finally, neither Blazesoft nor Blazegames treat the Operators' assets as their own. While the Operators make payments to Blazesoft under intercompany licensing and service agreements, those payments reflect arm's-length transactions, which the Operators properly record in their books. German Decl. ¶¶ 23–24, 26. Because these are market-rate transactions, they do not show that Blazesoft treats the Operators' assets as its own. *See Gruca*, 19 F. Supp. 2d at 869 (veil piercing not justified where transactions with parent were significant proportion of subsidiary's sales but there was no evidence that sales were anything but market-rate transactions). This factor too therefore cannot support piercing the veil. *See id.*

None of the four factors support piercing the veil. Instead, the relationships among Blazesoft, Blazegames, and the Operators reflect normal features of a parent-subsidiary relationship. *See LaSalle Nat'l Bank v. Vitro, Sociedad Anonima*, 85 F. Supp. 2d 857, 866 (N.D. Ill. 2000). Accordingly, the Court cannot exercise jurisdiction over Blazesoft and Blazegames under a veil-piercing theory.

### ii. Neither Blazesoft nor Blazegames exercise an unusually high degree of control over the Operators.

Blazesoft's alleged control over Blazegames and the Operators cannot confer jurisdiction either. It takes more than an "ordinary parent-subsidiary relationship that observes corporate

formalities" for control over a subsidiary to confer jurisdiction over the parent. *KM Enters.*, 725 F.3d at 733. After all, parents of "wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent." *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998). Nor is the existence of common officers or directors enough. *Alderson v. S. Co.*, 747 N.E.2d 926, 955 (Ill. App. Ct. 2001). Instead, the parent must exercise an "unusually high" degree of control over the subsidiary to confer jurisdiction over the parent. *Central States*, 230 F.3d at 943.

Courts consider several factors in determining whether this degree of control exists. These factors include "whether the parent arranged financing for the subsidiary, whether separate books, tax returns and financial statements are kept, and whether the officers or directors are the same." *LaSalle*, 85 F. Supp. 2d at 865 (citing *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 866–67 (N.D. Ill. 1998)). Courts also consider whether the parent holds its subsidiary out as an agent and the method of payment made to the parent by the subsidiary. *Gruca*, 19 F. Supp. 2d at 867.

Blazesoft does not exercise an unusually high degree of control over its subsidiaries. Blazegames and the Operators keep separate books, records, and financial statements, and file separate tax returns. *LaSalle*, 85 F. Supp. 2d at 865. Blazesoft has not authorized Blazegames to act on its behalf. Nor have Blazesoft or Blazegames authorized the Operators to act on their behalf and do not hold the Operators out as their agents. *Gruca*, 19 F. Supp. 2d at 867. To the contrary, under the MSAs and sublicensing agreements, Blazesoft and each of the Operators have agreed that neither party has authority to contract for or bind the other party in any way. German Decl. ¶ 27; *see Garcia v. Domino's Pizza, Inc.*, No. 24-cv-02090, 2024 WL 4378851, at *2 (N.D. Ill. Sept. 30, 2024) (agency theory of jurisdiction did not apply where parent corporation provided certain promotional and administrative services to subsidiary).

Nothing about the method of payments made to Blazesoft suggests an unusual degree of control. To start, controlling shareholders like Blazesoft and Blazegames are entitled to, among other things, "receive distributions of subsidiary profits." *See City of Greenville, Ill. v. Syngenta Crop Protection, Inc.*, 830 F. Supp. 2d 550, 556 (S.D. Ill. 2011). While the Operators make payments to Blazesoft under arm's-length intercompany agreements, German Decl. ¶¶ 23–24, these market-rate payments do not show that Blazesoft exercises an unusually high degree of control over the Operators, *see Gruca*, 19 F. Supp. at 870.

Finally, Plaintiffs allege that the companies share officers and directors. *See* FAC ¶ 35. But Illinois law has long held that courts cannot disregard the separate existence of two companies merely because they share officers. *See Logal v. Inland Steel Indus., Inc.*, 568 N.E.2d 152, 157 (Ill. App. Ct. 1991). In the absence of any other factor suggesting an unusually high degree of control, sharing officers and directors is not enough to confer jurisdiction over Blazesoft and Blazegames. *See LaSalle*, 85 F. Supp. 2d at 857 (citing *Gruca*, 19 F. Supp. 2d at 870).

Unable to allege actual control, Plaintiffs rely on the kind of general descriptions courts have consistently rejected as insufficient to establish personal jurisdiction. Plaintiffs rely heavily on the fact that Blazesoft executives and employees promote Fortune Coins, Sportzino, and Zula on their LinkedIn profiles by including those platforms in their employment biographies. *See* FAC ¶¶ 35–39. According to Plaintiffs, Blazesoft executives and employees have also used words like "we" and "our" when promoting Fortune Coins, Sportzino, and Zula. *See e.g.*, *id.* ¶¶ 20, 22, 25. This makes sense—they are part of the same corporate family. There is nothing unusual about a parent company promoting its subsidiaries or using shorthand like "we" and "our" to refer its affiliates. *See Garcia*, 2024 WL 4378851, at *2 (parent providing promotional activities to subsidiaries does not show that parent controls subsidiaries); *GC2 Inc. v. Int'l Game Tech. PLC*,

10

No. 16 C 8794, 2017 WL 2985741, at *9 (N.D. Ill. July 13, 2017) (parent using terms like "we" and "our" in reference to members of corporate family does not show that parent controls subsidiaries). Personal jurisdiction must be based on "[a]ctual evidence of control," not the "general descriptions" on which Plaintiffs rely. *LaSalle*, 85 F. Supp. 2d at 865.

Finally, in an effort to conjure a smoking gun, Plaintiffs point to two statements made in unrelated litigation that purportedly reveal that Blazesoft controls the Operators. According to Plaintiffs, Sportzino and Zula Casino "admitted" in that litigation that their websites are "administered and provided from, and all customer interactions are handled exclusively from their affiliates' offices located in Ontario, Canada." FAC ¶ 30. They also point to Blazesoft's Vice President of Business Operations statement that "Blazesoft provides support services to Zula and Sportzino, including the management of customer intake systems, maintenance of customer accounts and customer databases, and other interactions with customers." *Id.*

These purported admissions do not add up to much. Sharing an address says nothing about the level of control Blazesoft exercises over any of the Operators. *Woods v. Cortland Cap. Mkt. Servs., LLC,* No. 23-cv-3892, 2025 WL 524116, at *8 (N.D. Ill. Feb. 18, 2025); *see also Old Orchard*, 904 N.E.2d at 1062 (sharing of office space, without more, does not render one corporation liable for the obligations of another). And while Blazesoft does provide services to the Operators, that too does not undermine the companies' separate existence for purposes of personal jurisdiction. *See Central States*, 230 F.3d at 945. As courts have repeatedly recognized, there is nothing unusual about a parent company providing promotional or other support services to subsidiaries. *See e.g.*, *Cohen v. Kering Americas, Inc.*, No. 24-cv-7046, 2024 WL 4534988, at *2 (N.D. Ill. Oct. 21, 2024) (parent provided payroll, human resources, benefits administration); *Garcia*, 2024 WL 4378851, at *2 (parent provided promotional activities). Blazesoft, like many

11

parent companies, provides certain services to its subsidiaries. It did not expect that doing so would subject it to liability because of their actions. *Central States*, 230 F.3d at 947.

There is no basis to pierce the veil of the Operators or of Blazegames. Nor is there any basis to conclude that Blazesoft or Blazegames exercise an unusually high degree of control over the Operators. Accordingly, whatever contacts the Operators may have with Illinois cannot confer jurisdiction over Blazesoft and Blazegames.

> **B. Blazesoft's and Blazegame's independent contacts with Illinois are not enough to confer personal jurisdiction over them.**
>
>> **i. The Court lacks general jurisdiction over Blazesoft and Blazegames.**

The Court lacks general jurisdiction over Blazesoft and Blazegames because neither company is "at home" in Illinois. To establish general jurisdiction over a foreign corporation, a plaintiff must show that the corporation's contacts with the forum state are "so 'continuous and systematic' as to render [it] essentially at home in the forum." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). A corporation is generally at home in its place of incorporation and its principal place of business. *See Daimler AG v. Baumann*, 571 U.S. 117, 137 (2014). Only in an "exceptional case," will a corporate defendant's operations be "so substantial and of such a nature as to render the corporation at home" elsewhere. *Id.* at 140 n.19; *see Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015).

Neither Blazesoft nor Blazegames are "at home" in Illinois. Blazesoft is a Nova Scotia limited company; Blazegames is a Delaware corporation. German Decl. ¶ 2. Blazesoft has its principal place of business in Ontario, Canada. *Id.* ¶ 3. Blazegames is a holding company with no business operations anywhere, let alone in Illinois. *See id.* ¶ 9. Plaintiffs must therefore establish that this is an "exceptional case." *Daimler*, 571 U.S. at 137. They cannot. To the extent Blazesoft

and Blazegames have contacts with Illinois at all, they fall far short of being substantial enough to confer general jurisdiction. *Kipp*, 783 F.3d at 698–99. They have no offices, no employees, and no operations in Illinois. *See id.* They are not registered to do business in Illinois. *Id.* And even if, as Plaintiffs allege, Blazesoft and Blazegames entered "into contracts with Illinois residents and engag[ed] in ongoing economic relationships with them," FAC ¶ 15, that would not establish general jurisdiction. *See Kipp*, 783 F. 3d at 699; *see also Gharavi v. FloSports, Inc.*, No. 24-cv-1969, 2025 WL 815699, at *7–8 (N.D. Ill. Mar. 14, 2025) (marketing and distributing services to Illinois residents not enough to establish general jurisdiction). Because Blazesoft and Blazegames are not "at home" in Illinois, the Court cannot exercise general jurisdiction over them.

### ii. The Court lacks specific jurisdiction over Blazesoft and Blazegames.

The Court also lacks specific jurisdiction because Blazesoft and Blazegames have never purposefully directed their activities at Illinois. For a court to exercise specific jurisdiction, "there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by and through Myer v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 861 (7th Cir. 2024).

Purposeful availment focuses on the "acts and activities of the defendant." *In re Sheehan*, 48 F.4th 513, 522 (7th Cir. 2022) (citing *Walden v. Fiore*, 572 U.S. 277, 284 (2014)). "Specific personal jurisdiction cannot depend solely on the actions of the plaintiff or third parties." *Id.* at 523. "This focus on a defendant's activities means that it is not enough that the defendant took some action that ultimately had an effect on the plaintiff in the forum." *Id.* In other words, to

establish personal jurisdiction, a plaintiff must show that a defendant "'intentionally directed' or 'expressly aimed' the alleged wrongdoing" at the forum state. *Sheehan*, 48 F.4th at 525 (quoting *Walden*, 527 U.S. at 289) (brackets omitted).

Plaintiffs do not meaningfully allege that Blazesoft or Blazegames have, through their own conduct, intentionally directed or expressly aimed their activities at Illinois. Plaintiffs lump Blazesoft and Blazegames together with the Operators, alleging that "Defendants" provided "services to residents of this District that they knew would be used within this District, advertising their services in Illinois, and actually profiting from" the Operator's platforms. FAC ¶ 14; *see Chamberlain Grp., Inc. v. Techtronic Indus. N. Am.*, No. 16-cv-06113, 2017 WL 4269005, at *3 (N.D. Ill. Sept. 26, 2017) ("A complaint must set forth what each person (or corporation) is accused of doing."). Blazesoft and Blazegames do not provide services to residents of this District, though. Blazegames is a holding company with no business operations. German Decl. ¶ 9. Blazesoft provides services to the Operators, which are not Illinois residents; they are Delaware limited liability companies with their principal places of business in Ontario. *Id.* ¶ 10. At most, Blazesoft maintains a passive, informational website that is accessible in Illinois, and through which Illinois residents could theoretically contact the company and apply for employment in Canada. *See id.* ¶ 7. That is not enough to demonstrate that Blazesoft has "targeted" Illinois. *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802–03 (7th Cir. 2014) (website that allowed users to sign up for company-related emails was not enough to establish a relation between the company and the forum).

Because Blazesoft and Blazegames have neither targeted nor exploited the Illinois market, they have not purposefully availed themselves of the privilege of doing business there. *Sheehan*,

48 F.4th at 525. The Court therefore cannot exercise specific jurisdiction over Blazesoft and Blazegames.

## CONCLUSION

Blazesoft and Blazegames have no connection to Illinois. They are not incorporated or headquartered in Illinois, and they have no offices, employees, or assets there. To the extent that their subsidiaries have sufficient contacts with Illinois to establish personal jurisdiction over them, those contacts cannot confer jurisdiction over Blazesoft and Blazegames. Each of the companies is a separate legal entity, and the Court should decline Plaintiffs' invitation to disregard this reality. The Court should therefore dismiss Plaintiffs' claims against Blazesoft and Blazegames for lack of personal jurisdiction.

Dated: June 4, 2025

Respectfully submitted,

/s/A. Jeff Ifrah
A. Jeff Ifrah
jeff@ifrahlaw.com
Robert W. Ward
rward@ifrahlaw.com
IFRAH PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
(202) 524-4140

*Counsel for Defendants Blazesoft Ltd. and Blazegames, Inc.*