IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(Eastern Division)

| | |
|---|---|
| VINCENT AMBROSIA JR. and ROBERT HOUPT, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No.: 1:25-cv-01723 |
| v. | Hon. Matthew F. Kennelly |
| BLAZESOFT LTD., BLAZEGAMES, INC., SSPS LLC d/b/a SPORTZINO, SCPS LLC d/b/a ZULA CASINO, SOCIAL GAMING LLC d/b/a FORTUNE COINS, | |
| *Defendants*. | |

**MOTION TO REASSIGN RELATED ACTIONS**

Plaintiffs Vincent Ambrosia Jr. and Robert Houpt filed the first case in this District against owners and operators of online casino websites alleging that they run an illegal gambling operation—one where players can wager and lose real money—masked as a free-to-play "sweepstakes." The case was assigned to this Court. Since that first filing, two near-identical actions have been filed against other casino website operators advancing (i) the same core facts, (ii) the same key causes of action, and (iii) implicating the same defenses at both the outset and down the road, starting with motions to compel arbitration. The cases are brought by the same under-signed firm and defended by the same defense firm (with additional firms for certain additional defendants).

These later-filed cases have been assigned to two different judges in this District. In light of the related issues of fact and law across these cases and to avoid the judicial inefficiencies and potentially inconsistent rulings between the matters, Plaintiffs from the three cases, Vincent Ambrosia Jr., Robert Houpt, Brayden Urdan, Milauncre Mayhone, and Catherine Rousseau

1

(collectively, the "Plaintiffs"), respectfully move to reassign these related cases pursuant to L.R. 40.4.[1]

## BACKGROUND

Plaintiffs Ambrosia and Houpt filed their case on February 19, 2025, and a first amended complaint on May 6, 2025. (Dkts. 1, 27.) On April 7, 2025, Plaintiff Brayden Urdan filed his case, captioned *Urdan v. Sweepsteaks Limited d/b/a Stake.us*, No. 25-cv-03736 (N.D. Ill.) ("*Stake*"), which was assigned to the Hon. Jorge L. Alonso.[2] Plaintiffs Milauncre Mayhone and Catherine Rousseau filed their complaint on July 30, 2025, which is captioned *Mayhone, et al. v. MW Services Limited, et al.*, No. 25-cv-08956 (N.D. Ill.) ("*Wow Vegas*") and was assigned to the Hon. Steven C. Seeger.

Each case alleges that the respective Defendants own and operate online casinos that offer games of chance like those found in a traditional brick-and-mortar casino, including slots. (*Blazesoft*, Dkt. 27, ¶ 1; *Stake*, Dkt. 1, ¶¶ 1–2; *Wow Vegas*, Dkt. 1, ¶¶ 1–2.) The Plaintiffs claim that the online casinos attempt to obfuscate that they are running an illegal gambling operation by offering a "dual-currency" system. (*Blazesoft*, Dkt. 27, ¶¶ 51–64, 77–84; *Stake*, Dkt. 1, ¶¶ 33–51; *Wow Vegas*, Dkt. 1, ¶¶ 3–5, 33–49.) On the one hand, the casinos offer virtual tokens—called Gold Coins in *Blazesoft* and *Stake* and WOW Coins in *Wow Vegas* that have no real-world value and cannot be cashed out, but can be used for gameplay to win more virtual tokens. (*Blazesoft*, Dkt. 27, ¶ 51; *Stake*, Dkt. 1, ¶¶ 34–35; *Wow Vegas*, Dkt. 1, ¶ 34.) On the other hand, the casinos offer a different "sweepstakes" coin currency—called Sweepstakes Coins or Fortune Coins in *Blazesoft*, Stake Cash in *Stake*, and Sweeps Coins in *Wow Vegas*. (*Blazesoft*, Dkt. 27, ¶¶

---

[1] Plaintiffs informed all Defendants of their intention to move to reassign the *Stake* and *Wow Vegas* cases. All Defendants indicated that they opposed the motion.
[2] Pursuant to L.R. 40.4(c), a copy of the operative complaints in *Stake* and *Wow Vegas* are attached hereto as Exhibits 1 and 2, respectively.

51, 54; *Stake*, Dkt. 1, ¶ 36; *Wow Vegas*, Dkt. 1, ¶ 34.) These sweepstakes coins can in fact be wagered on casino games and cashed out for real money at a fixed 1:1 ratio with the U.S. Dollar. (*Blazesoft*, Dkt. 27, ¶ 54; *Stake*, Dkt. 1, ¶ 36; *Wow Vegas*, Dkt. 1, ¶ 34.) Plaintiffs allege that the sweepstakes coins, which are bundled for purchase alongside the virtual coins, are the real driver of the online casinos. (*Blazesoft*, Dkt. 27, ¶¶ 55–64; *Stake*, Dkt. 1, ¶¶ 39–43; *Wow Vegas*, Dkt. 1, ¶¶ 35–43.)

Plaintiffs' factual allegations and overall legal theory—that selling sweepstakes coins and allowing players to wager them for real money constitutes illegal gambling operations—are identical across the cases. (*Blazesoft*, Dkt. 27, ¶ 4; *Stake*, Dkt. 1, ¶ 53; *Wow Vegas*, Dkt. 1, ¶ 6.) Accordingly, all of the actions allege, on behalf of Illinois classes, violations of the Illinois Loss Recovery Act, 720 ILCS 5/28-8 and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, and a claim for unjust enrichment.[3] (*Blazesoft*, Dkt. 27, ¶ 106–144; *Stake*, Dkt. 1, ¶¶ 83-121; *Wow Vegas*, Dkt. 1, ¶¶ 79–116.)

Defendants have raised, or are likely to raise in the future, similar defenses to the action. Foremost, Defendants in the *Blazesoft* and *Stake* cases have filed motions to compel arbitration. (*Blazesoft*, Dkt. 42; *Stake*, Dkt. 12.) Plaintiffs expect Defendants in *Wow Vegas* will file a similar motion to compel soon. Defendants' motions and Plaintiffs' oppositions on this front raise similar points, tailored as appropriate to the respective arbitration provisions. (*Blazesoft*, Dkts. 43, 55; *Stake*, Dkts. 13, 25.) No discovery has taken place in any of the actions at this time.

## LEGAL STANDARD

L.R. 40.4 allows similar cases pending in this District to be reassigned before the same

---

[3] While the *Blazesoft* case does assert additional nationwide class claims under Ontario law, they flow from the same nucleus of operative fact as the claims under Illinois law. (*Blazesoft*, Dkt. 27, ¶¶ 145–79.)

3

judge. "To obtain reassignment of a case, a movant must first show that the case to be reassigned is related to a previously filed case and then demonstrate that reassignment would promote efficient use of judicial resources." *Glob. Pat. Holdings, LLC v. Green Bay Packers, Inc.*, No. 00 C 4623, 2008 WL 1848142, at *2 (N.D. Ill. Apr. 23, 2008). As to relatedness, "[t]wo or more civil cases may be related if . . . the cases involve some of the same issues of fact or law[.]" L.R. 40.4(a). Additionally, the procedural conditions for reassignment that must be met are as follows:

> (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

L.R. 40.4(b). When these conditions are met, the cases may be reassigned to the judge in the lowest-numbered case based upon a motion of any party. *See* L.R. 40.4(c). Because all relevant conditions are met in this instance, reassignment is appropriate.

## ARGUMENT

### A. The *Blazesoft*, *Stake*, and *Wow Vegas* Cases Are Related.

L.R. 40.4(a) is satisfied if the cases "involve some of the same issues of fact or law[.]" L.R. 40.4(a)(2). Critically, "two cases need not be absolutely identical to be related" under this rule. *Glob. Pat. Holdings, LLC*, 2008 WL 1848142, at *3. It is enough that there are "some" common allegations. *See Brunner v. Jimmy John's, LLC*, Nos. 14 C 5509, 15 C 1681, 2016 WL 7232560, at *2 (N.D. Ill. Jan. 14, 2016) (rejecting argument that the claims must "neatly overlap"); *Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 18-cv-6109, 2019 WL 2515984, at *3 (N.D. Ill. June 18, 2019) ("Local Rule 40.4(a) requires only that the potentially related case share *some* of the same issues of fact or law, not that the key issue is the same in both cases."). Even a cursory review of the factual and legal allegations across the

*Blazesoft*, *Stake*, and *Wow Vegas* cases shows substantial overlap, easily meeting L.R. 40.4(a)'s minimal standard.

Whether considering allegations about the websites' operations to the substantive claims in the cases to the putative classes at issue, there is little daylight between the operative complaints. The below table highlights these key areas of commonality in allegations across the pleadings.

| Overlapping Issue | *Blazesoft* (Dkt. 27) | *Stake* (Dkt. 1) | *Wow Vegas* (Dkt. 1) |
|---|---|---|---|
| **Defendants' Operations** | Use of dual-currency system (Sweeps Coins & Gold Coins); deceptive "social casino" branding; real-money gambling disguised as free play. (¶¶ 51–64, 77–84.) | Dual-currency system (Stake Cash & Gold Coins); social casino façade; real-money gambling via Stake Cash. (¶¶ 33–51.) | Dual-currency system (Sweeps Coins & WOW Coins); social casino façade; real-money gambling via Sweeps Coins. (¶¶ 3–5, 33–49.) |
| **Consumer Deception and Misrepresentation** | False claims that platforms do not offer real money gambling; misleading advertising and concealment. (¶¶ 81–83, 87–90, 122–139.) | False claims that platforms do not offer real money gambling; deceptive marketing and interface design. (¶¶ 39–51, 109–110.) | False claims that platforms do not offer real money gambling; deceptive marketing including celebrity endorsements. (¶¶ 44–45, 105–106.) |
| **Failure to Provide Required Consumer Protections** | No age verification or problem gambling resources as required by Illinois law. (¶¶ 74–76, 134.) | Failure to provide mandated warnings, self-exclusion programs, and addiction resources. (¶¶ 54–59, 111.) | Lack of statutorily required consumer protections; inadequate responsible gaming measures. (¶¶ 50–55, 107.) |
| **Illegality Under Illinois Gambling Laws** | Operation of illegal online casinos violating Illinois law; wagering constitutes unlawful gambling. (¶¶ 82, 100(b)–(e), 106–121.) | Illegal operation of online casino; violation of Illinois Internet gambling prohibition. (¶¶ 27, 32, 87–98, 113.) | Illegal operation of online casino; violation of Illinois Internet gambling prohibition. (¶¶ 24, 32, 79–94.) |

5

| **Class Action Allegations** | Defining Illinois subclasses of individuals who lost money on Defendants' website. (¶¶ 98–105.) | Defining Illinois class and subclass of individuals who lost money on Defendant's website. (¶¶ 75–82.) | Defining Illinois subclass of individuals who lost money on Defendants' website. (¶¶ 71–78.) |
|---|---|---|---|
| **Violations of Illinois Loss Recovery Act** | Claims under 720 ILCS 5/28-8 for recovery of losses over $50. (¶¶ 106–121.) | Claims under 720 ILCS 5/28-8 for recovery of losses over $50. (¶¶ 83–98.) | Claims under 720 ILCS 5/28-8 for recovery of losses over $50. (¶¶ 79–94.) |
| **Violations of Illinois Consumer Fraud Act** | Alleged unfair, deceptive, and fraudulent business practices involving false representation of platforms as non-gambling; sale of Sweeps Coins redeemable for cash; aggressive marketing exploiting vulnerable consumers; failure to provide required consumer protections such as age restrictions and problem gambling resources; conduct offending public policy against unlawful gambling. (¶¶ 122–139.) | Similar allegations of deceptive business practices including misrepresenting Stake.us as a social casino without real-money gambling; use of misleading marketing tactics featuring influencer promotions; sale of Stake Cash as merchandise convertible to real money; failure to comply with mandated consumer safeguards; conduct violates public policy. (¶¶ 99–116.) | Parallel claims of deceptive business acts by falsely portraying WOW Vegas as non-gambling; marketing campaigns highlighting large wins of Sweep Coins; sale of Sweeps Coins tied to real currency; inadequate responsible gaming measures; violation of Illinois public policy; causing substantial injury to consumers. (¶¶ 95–111.) |
| **Unjust Enrichment** | Defendants unjustly enriched by retaining profits from illegal gambling. (¶¶ 140–144.) | Defendant unjustly enriched by retaining profits from illegal gambling. (¶¶ 117–121.) | Defendants unjustly enriched by retaining profits from illegal gambling. (¶¶ 112–116.) |
| **Overlapping Motions to Compel and Arguments Against** | Defendants moved to compel (Dkt. 42), with Plaintiffs filing an opposition explaining that the arbitration provision is unenforceable because, among other | Defendant moved to compel (Dkt. 12), with Plaintiff opposing on a host of substantive and procedural unconscionability grounds. (Dkt. 25.) | Yet to be filed, but Plaintiff anticipates raising similar unconscionability arguments in opposition. |

| | grounds, it is unconscionable. (Dkt. 55.) | | |

Courts regularly find cases related when, as here, the relevant complaints include similar factual issues and legal claims. *See, e.g.*, *Stingley v. Laci Transp., Inc.*, 18-cv-06221, 2020 WL 12182491, at *4 (N.D. Ill. Dec. 1, 2020) (rejecting "Defendants' overall objection [] that, because some of the parties are different and there are factual differences, the cases are not similar enough" and finding "the difference between the cases are significantly outweighed by the legal and factual similarities"); *Helferich Pat. Licensing, L.L.C. v. N.Y. Times Co.*, No. 1:10-cv-04387, 2012 WL 1368193, at *2 (N.D. Ill. Apr. 19, 2012) (finding cases alleging "nearly identical" misconduct raised similar legal issues, notwithstanding different defendants in different businesses); *Pactiv Corp. v. Multisorb Techs., Inc.*, No. 10 C 461, 2011 WL 686813, at *3 (N.D. Ill. Feb. 15, 2011) (finding relatedness met when "the relevant language of the complaints [was] nearly identical[]" such that discovery and legal issues raised would be similar). In fact, when considering an earlier wave of cases filed against Apple, Google, and a multitude of application-developer defendants related to gambling applications on Apple and Google's platforms, the Judicial Panel on Multidistrict Litigation highlighted the actions involved a common question of fact, including how the apps offered casino-style games that users could purchase virtual coins to play for the chance to win more playing time. *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 532 F. Supp. 3d 1409 (J.P.M.L. 2021); *In re Google Play Store Simulated Casino-Style Games Litig.*, 544 F.Supp. 3d 1364 (J.P.M.L. 2021).The JPML further highlighted that the cases all raised allegations that the apps involved gambling in violation of state laws. *Id.* While these earlier cases were substantively different in that they involved "free-to-play" games that did not allow for any real money to be cashed out,

they cement that the overall issues are so similar as to be related. (And here, of course, all of the proposed related cases *do* involve the same gameplay mechanics, including a dual-currency system that allows for real-money gambling.) Because numerous issues of fact and law overlap across the *Blazesoft*, *Stake*, and *Wow Vegas* cases, L.R. 40.4(a) is satisfied.

### B. Reassignment of These Cases Is Appropriate.

Next, all of the procedural requirements in L.R. 40.4(b) are met: (1) all cases are pending in this District, (2) reassignment is "likely to result in a substantial saving of judicial time and effort[,]" (3) the cases are at a similar stage such that "designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially[,]" and (4) "the cases are susceptible of disposition in a single proceeding." *Id.*

First, all cases were filed and are pending in the Eastern Division of this District. Thus, reassignment comports with L.R. 40(b)(1).

Second, reassignment will undoubtedly result in a "substantial saving" of judicial resources because of the myriad overlapping factual and legal issues identified above. L.R. 40.4(b)(2). Instead of three judges needing to become fully informed of the technical underpinnings of the websites, the functioning of their currency systems, and the application of various Illinois laws and regulations related to gambling, only one judge will need to do so. This will foster efficiencies throughout the case. For example, discovery across the cases will involve the same issues and relevant facts, and one court can efficiently address any disputes over such discovery consistently across all three actions. Likewise, as to substantive motion practice—from the motion to compel and dismiss stage all the way through summary judgment—one judge can decide dispositive issues across the cases, which each invoke the same laws and legal theories. *See Brunner*, 2016 WL 7232560 (finding reassignment appropriate to "streamline discovery and

future proceedings[]"); *Pactiv Corp.*, 2011 WL 686813, at *4 (recognizing reassignment appropriate in cases involving same technology, with overlapping discovery and the risk of inconsistent rulings). Indeed, the JPML recognized as much when it centralized app-store gambling cases in 2021: "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 532 F. Supp. 3d at 1410. So too here, where coordination will "promote[] efficient use of judicial resources by minimizing duplication of effort on cases that have a great deal in common." *Glob. Pat. Holdings, LLC*, 2008 WL 1848142, at *2; *Fairbanks Cap. Corp. v. Jenkins*, No. 02 C 3930, 2002 WL 31655277, at *2 (N.D. Ill. Nov. 25, 2002) (noting Seventh Circuit criticism for opinion allowing multiple cases involving similar legal issues "to proceed along different tracks before different judges, resulting in numerous and disparate decisions, as well as multiple appeals[]"). In addition, Plaintiffs' counsel and most of Defendants' counsel are the same across the actions.[4] *Urban 8 Fox Lake Corp.,* 2019 WL 2515984, at *4 (noting that " . . . counsel, and many of the facts are the same or substantially similar [across the actions]. Given this overlap, the two cases can be handled most efficiently in the same proceeding.").

Third, the cases are at a similar stage such that reassigning the cases would not delay the earliest filed case at all, much less substantially. *See* L.R. 40.4(b)(3). The cases were filed in relatively short succession. Defendants just filed their motion to compel reply in *Blazesoft* and are slated to soon in *Stake*. Plaintiffs anticipate that Defendants in *Wow Vegas* will file their own

---

[4]    All Defendants in *Wow Vegas* and *Stake* are represented by Ifrah Law, which also represents two Defendants in *Blazesoft*.

motion to compel in short order.[5] No discovery has begun in any of the cases, and no discovery close date has been set. The cases can easily be placed on a unified schedule without causing any undue or prejudicial delay.[6] Courts have allowed reassignment at much later stages of the proceedings. *See Brunner*, 2016 WL 7232560, at *3 (reassigning cases on the eve of sending notice to class). Doing so here, a few months after the first case's filing, does not run afoul of L.R. 40.4(b)(3).

Finally, the cases are "susceptible to disposition in a single proceeding." L.R. 40.4(b)(4). Critically, the rule does not require "that the cases *will* be disposed of at the same time, but only that they are *susceptible*." *Velocity Pat. LLC v. Mercedes-Benz USA, LLC*, No. 13-cv-8413, 2014 WL 1661849, at *2 (N.D. Ill. Apr. 24, 2014) (emphasis in original); *Urban 8 Fox Lake Corp.*, 2019 WL 2515984, at *4 ("Plaintiffs need only show that the two actions are susceptible to be disposed of together, not that they will be."); *Helferich Pat. Licensing, L.L.C.*, 2012 WL 1368193, at *3 ("Reassignment does not require that the two cases be bound together, proceeding in unison for all purposes."); *Pactiv Corp.*, 2011 WL 686813, at *5 ("[T]he rule does not require that the cases be completely identical to permit reassignment."). This can be the case even with different defendants each offering different allegedly problematic products. *Velocity Pat. LLC*, 2014 WL 1661849, at *2 (rejecting defendant's claim that it "is a separate company

---

[5]  As it relates to *Wow Vegas*, L.R. 40.4(c) notes that motions to reassign should generally not be filed until after a defendant has answered or filed a motion in lieu of an answer. However, this is not a firm requirement, and does not bar an otherwise meritorious motion when the overlapping issues are sufficiently clear and where, as here, *Wow Vegas*'s counsel has been made aware of the motion and afforded an opportunity to respond. *Urban 8 Fox Lake Corp.*, 2019 WL 2515984, at *4 (emphasizing that rule "does not require" a defendant to answer or plead before filing, granting reassignment). The alternative—to decide reassignment as to *Stake*, and to have Plaintiffs refile their motion as to *Wow Vegas* after the motion to compel is filed—will simply result in more make-work and inefficiency that the reassignment rule is designed to avoid in the first place.

[6]  That said, as Plaintiffs are not moving to consolidate the cases, a single schedule would not be required, and the court could maintain the slightly staggered schedule should it prefer.

10

with its own product at issue[,]" finding "[t]his fact is not dispositive of an inability to dispose of the two cases in a single proceeding[]"). Thus, "Courts have held that the fourth factor is satisfied when issues of both law and fact are the same in both cases." *Pactiv Corp.*, 2011 WL 686813, at *5; *Glob. Pat. Holdings, LLC*, 2008 WL 1848142, at *4 ("[A] review of the pleadings in conjunction with the parties' submissions on this motion convinces this court that both actions involve *prima facie* fundamentally similar claims and defenses that will likely be amenable to dispositive treatment in unified proceedings, whether in claim construction, summary judgment, or trial.").

Here, the overlapping issues of law and fact make the case well-suited for disposition in a single proceeding. For example, summary judgment motions would implicate overlapping laws—namely, the Illinois Loss Recovery Statute, the Illinois Consumer Fraud Act, and construction of Illinois common-law unjust enrichment claim; apply them to the same underlying facts—the operation of Defendants' online casinos and their use of sweepstakes coins to allow real-money gambling; to determine dispositive legal issues—whether or not the conduct is illegal gambling that violates these laws. Because the "cases are fundamentally similar and involve the same allegedly [wrongful conduct,]" reassignment is appropriate. *Pactiv Corp.*, 2011 WL 686813, at *5; *21 srl v. Enable Holdings, Inc.*, No. 09-cv-3667, 2009 WL 4884177, at *3 (N.D. Ill. Dec. 9, 2009) ("Issues likely to be raised at . . . summary judgment[] and trial are likely to be shared by all defendants.").

Because all relevant L.R. 40.4(a) and (b) factors are satisfied, the *Stake* and *Wow Vegas* cases should be reassigned before this Court.

Respectfully Submitted,

**VINCENT AMBROSIA JR.** and **ROBERT HOUPT**, individually and on behalf of all others similarly situated,

Dated: August 19, 2025

By: */s/ Michael Ovca*
One of Plaintiffs' Attorneys

J. Eli Wade-Scott
ewadescott@edelson.com
Michael Ovca
movca@edelson.com
Hannah Hilligoss
hhilligoss@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the putative classes*