**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VINCENT AMBROSIA, JR., and ROBERT HOUPT, individually and on behalf of all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 25 C 1723** |
| **BLAZESOFT LTD., BLAZEGAMES, INC., SSPS LLC d/b/a SPORTZINO, SCPS LLC d/b/a ZULA CASINO, and SOCIAL GAMING LLC d/b/a FORTUNE COINS,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

      Vincent Ambrosia, Jr. and Robert Houpt sued gaming website operators SSPS LLC d/b/a Sportzino, SCPS LLC d/b/a Zula Casino, and Social Games LLC d/b/a Fortune Coins and related companies Blazesoft, Ltd. and Blazegames Inc. Their suit is filed on behalf of a putative class of others similarly situated. Plaintiffs allege that the gaming website operators prey on consumers through addictive and illegal online gambling that they falsely market as free-to-play sweepstakes. Defendants have moved to compel arbitration of plaintiffs' claims. For the reasons stated below, the Court grants defendants' motion.[1]

---

[1] Plaintiffs filed a motion to strike portions of Geoff R. Hall's declaration [dkt. no. 56-1]. The Court does not rely on Hall's declaration in granting the motion to compel, so the

## Background

Three of the defendants—SSPS LLC d/b/a Sportzino, SCPS LLC d/b/a Zula Casino, and Social Games LLC d/b/a Fortune Coins (the Operators)—operate online gaming websites.  Another defendant, Blazegames, Inc., is the sole member and equity owner of Zula and Sportzino.  The final defendant, Blazesoft Ltd., is the shareholder of Blazegames, Inc. and provides services to the Operators.  Defendants operate their gaming websites from Ontario, Canada.

Ambrosia and Houpt are citizens of Illinois and used the Operators' websites while located in Illinois.  To use these websites, Ambrosia and Houpt accepted the relevant Operator's Terms and Conditions.  Each set of Terms and Conditions contains a mandatory arbitration agreement that provides for arbitration in Toronto, Ontario, Canada.  Defs.' Mem., Ex. J § 12.6(e).  The arbitration agreement requires the parties to arbitrate

> any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction by You, your access to or use of the Service, or to this Arbitration Agreement, the Terms of Use, the Sweeps Rules or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use) (a "Dispute") . . .

*Id*. § 12.2.  The arbitration agreement also contains a broad delegation clause that

> delegate[s] to the arbitrator the exclusive jurisdiction to rule on his or her own jurisdiction over the Dispute, including any objections with respect to the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of the Dispute.

*Id*.

---

motion to strike [dkt. no. 57] is moot.

Plaintiffs filed suit on May 6, 2025, alleging that defendants preyed on them and others similarly situated through addictive and illegal online gambling falsely marketed as free-to-play sweepstakes. Plaintiffs assert claims under the Illinois Loss Recovery Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, common law principles of unjust enrichment, and the Ontario Consumer Protection Act. Defendants have moved to compel arbitration.

## Discussion

### A.    Personal jurisdiction

Defendants have also filed a motion to dismiss for lack of personal jurisdiction but ask the Court to first resolve their motion to compel arbitration. Plaintiffs argue that the Court cannot rule on the motion to compel arbitration without first establishing the existence of personal jurisdiction.

Unlike subject matter jurisdiction, a defendant may waive an objection to personal jurisdiction through its actions. *Gerber v. Riordan*, 649 F.3d 514, 518-19 (7th Cir. 2011). But only filings that give a plaintiff a "reasonable expectation" that a defendant "will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking" result in the waiver or forfeiture of a personal jurisdiction defense. *Id.*; *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The Seventh Circuit has explained that a defendant has "not acced[ed] to the district court's jurisdiction" when "moving to stay the litigation pending arbitration." *Gerber*, 649 F.3d at 519. "Far from indicating that a defendant intends to defend a suit on the merits, a motion to stay can serve to indicate the opposite—that a defendant intends to seek

alternate means of resolving a dispute, and avoid litigation in that jurisdiction." *Id.* Thus the Court may decide defendants' motion to compel arbitration before determining if it has personal jurisdiction over defendants.

**B.    Choice of law**

The parties disagree on the governing law. Defendants argue that the arbitration agreement is enforceable because it is governed by the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the New York Convention). Defs.' Mem. at 17. Defendants maintain that under the New York Convention, the agreement would be unenforceable only if it is null and void. Plaintiffs contend that the arbitration agreement is invalid because it is governed by the Ontario Arbitration Act and Ontario law. Plaintiffs argue that the Ontario Arbitration Act and Ontario law "protect[] consumers from precisely this type of corporate abuse, wherein consumers are stripped of their rights to a judicial forum through adhesive contracts." Pls.' Resp. at 7.

The New York Convention is a multilateral treaty that requires any "court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article," to "refer the parties to Arbitration" at any party's request, unless the court "finds that the said agreement is null and void, inoperative, or incapable of being performed." New York Conv., T.I.A.S. No. 6977, Art. II § 3.

Both the United States and Canada are signatories to the New York Convention. Canada adopted the Convention through the United Nations Foreign Arbitral Awards Convention Act. Revised Statutes of Canada, 1985, c. 16 (2nd Supp.) ("The

Convention is approved and declared to have the force of law in Canada during such period as, by its terms, the Convention is in force.").  The United Nations Foreign Arbitral Awards Convention Act states that, "[i]n the event of any inconsistency between the provisions of this Act, or the Convention, and the provisions of any other law, the provisions of this Act and the Convention prevail to the extent of the inconsistency."  *Id.*

The United States adopted the New York Convention through the Federal Arbitration Act.  9 U.S.C. § 201.  The FAA states that the Convention "shall be enforced in United States courts in accordance with this chapter."  *Id.*  The FAA also provides that an arbitration agreement between citizens of the United States and citizens of another signatory country fall under the Convention.  9 U.S.C. § 202.

Plaintiffs argue that the Ontario Arbitration Act governs defendants' motion to compel arbitration because the arbitration agreement states that it is "governed by the *Arbitration Act*, Ontario."  Defs.' Mem., Ex. J § 12.3.  But the parties' agreement also states that "[a]ll issues and questions concerning the construction, validity, interpretation and enforceability of this Agreement, or the right and obligations of Users, are governed by, and construed in accordance with, the laws of Ontario, Canada, without giving effect to any choice of law or conflict of law rules."  *Id.* § 13.1.  The laws of Ontario, Canada adopt the New York Convention through the United Nations Foreign Arbitral Awards Convention Act.  And the United Nations Foreign Arbitral Awards Convention Act states that, in the event of any inconsistency, it and the Convention prevail over any other law. Revised Statutes of Canada, 1985, c. 16 § 5 (2nd Supp.) ("[i]n the event of any inconsistency between the provisions of this Act, or the Convention, and the provisions of any other law, the provisions of this Act and the Convention prevail to the extent of

the inconsistency.").

Under the laws of both the United States and Canada, an agreement is governed by the New York Convention if: (1) there is a written agreement; (2) the agreement provides for arbitration in a signatory country; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen, or the commercial relationship has some reasonable relation with one or more foreign states. New York Convention, T.I.A.S. No. 6977, Art. II; Revised Statutes of Canada, 1985, c. 16 (2nd Supp.); *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1024 (7th Cir. 2013). These conditions are met here; there is no viable argument to the contrary. For these reasons, the Court concludes that the arbitration agreement is governed by the New York Convention.

**C.     Arbitrability**

There is no dispute that plaintiffs' claims fall within the parties' arbitration agreement. Instead, plaintiffs argue that the agreement to arbitrate is unenforceable or invalid for three reasons: (1) it is barred by the Ontario Consumer Protection Act; (2) it is unconscionable; and (3) it is part of an unlawful gambling contract. But under the terms of the parties' agreement, these are not matters for the Court to decide. The arbitration agreement broadly "delegate[s] to the arbitrator the exclusive jurisdiction to rule on his or her own jurisdiction over the Dispute, including any objections with respect to the scope, *validity, enforceability*, or severability of this Agreement or its provisions . . . " Defs.' Mem., Ex. J, § 12.2 (emphasis added). Canadian courts have "held that, when an arbitration clause exists, any challenges to the jurisdiction of the arbitrator must first be referred to the arbitrator." *Muroff v. Rogers Wireless Inc.*, 2007 S.C.C. 35,

6

¶ 11 (Can.).  The only exception to this rule is when the challenge to an arbitrator's jurisdiction "concerns a question of law alone" or where "answering questions of fact entails a superficial examination . . . "  *Id.*  In the U.S., the Supreme Court has "consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).  Faced with this, plaintiffs do not dispute that the arbitration agreement signaled the parties' intent to delegate all issues of arbitrability to the arbitrator.  Instead, they simply argue—in conclusory fashion—that the delegation clause is unenforceable for the same three reasons just referenced.

The relevant provision of the New York Convention requires that a court enforce an arbitration agreement (in this situation, an arbitration agreement's delegation clause) "unless it finds that the [ ] agreement is null and void, inoperative or incapable of being performed."  New York Convention, T.I.A.S. No. 6977, Art. II § 3.  "The 'null and void' language must be read narrowly, for the signatory nations [to the New York Convention] have jointly declared a general policy of enforceability of agreements to arbitrate."  *Khan v. Parsons Glob. Servs., Ltd.*, 480 F. Supp. 2d 327, 339–40 (D.D.C. 2007), *rev'd on other grounds*, 521 F.3d 421 (D.C. Cir. 2008) (quoting *Rhone Mediterranee Compagnia v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983)).  Courts have held that only defenses that can be applied neutrally on an international scale (*e.g.,* fraud, mistake, duress or waiver) render "null and void" an agreement governed by the New York Convention.  *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012); *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005); *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71,

7

79 (1st Cir. 2000). "The goal of the Convention . . . was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 (1974); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 639 (1985) (under the Convention, "it will be necessary for national courts to subordinate domestic notions of arbitrability to the international policy favoring commercial arbitration"). The Seventh Circuit has likewise recognized that "many decisions have noted that the New York Convention demonstrates a shared understanding of the necessity for uniform rules to facilitate efficient international arbitration." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 500 F.3d 571, 577 (7th Cir. 2007) (collecting cases).

In *Bautista v. Star Cruises,* the Eleventh Circuit held that the New York Convention's "'null and void' clause was confined to 'standard breach-of-contract defenses'" and that "[t]he limited scope of the Convention's null and void clause 'must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.'" *Bautista*, 396 F.3d at 1302 (quoting *DiMercurio*, 202 F.3d at 79-80). The Eleventh Circuit has since noted that this holding is in "complete accord with the prevailing authority in other circuits." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1277 (11th Cir. 2011) (collecting cases). The Third Circuit explained that this narrow reading of the "null and void" clause is necessary because "signatory nations have effectively declared a joint policy that presumes the enforceability of agreements to arbitrate." *Rhone Mediterranee*

*Compagnia v. Lauro*, 712 F.2d 50, 54 (3d Cir. 1983).

Based on the goal of promoting fair and efficient international arbitration, courts have declined to apply defenses that differ among jurisdictions, such as unconscionability, to arbitration agreements subject to the New York Convention. *Khan*, 480 F. Supp. 2d at 338; *Bautista*, 396 F.3d at 1302; *DiMercurio*, 202 F.3d at 79. The Court agrees with this narrow reading of the "null and void" clause. The principal purpose of the Convention is to require uniform standards for the enforcement of arbitration agreements between parties who reside in different countries. *Scherk*, 417 U.S. at 520. This uniformity ensures that parties who enter into an international arbitration agreement will be on equal footing rather than subject to the unique policies of one party's home country over another's.

Plaintiffs have not argued fraud, mistake, duress, or waiver. *See United States v. Hook*, 195 F.3d 299, 310 (7th Cir. 1999) ("A party's failure to address or develop a claim in its opening brief constitutes a waiver of that claim, for '[i]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel . . . '"). Their arguments—that the delegation clause is barred by the Ontario Consumer Protection Act, is unconscionable, and is part of an unlawful gambling contract—concern only defenses that cannot be applied neutrally on an international scale. First, the Ontario Consumer Protection Act was enacted to specifically discourage commercial arbitration agreements in certain contexts. This directly contradicts the international policy, not to mention the policy of the United States, favoring arbitration. Second, the law applicable to an unconscionability defense is specific to each jurisdiction and has no common international standard (at least

plaintiffs have not argued that it does). Finally, there is no common standard the Court could apply to determine if the arbitration agreement constitutes an unlawful gambling contract. Each of these defenses would require application of law that is specific to a particular jurisdiction, as opposed to a standard recognized neutrally on an international scale. They do not fall within the scope of the New York Convention's "null and void" clause. Thus the Court cannot invalidate the delegation clause based on plaintiffs' asserted defenses.

Because the parties delegated the issues of arbitrability, plaintiffs' arguments that the agreement is barred by the Ontario Consumer Protection Act, unconscionable, and part of an illegal gaming contract are questions for the arbitrator.

## Conclusion

For the reasons stated above, the Court grants defendants' motion to compel arbitration [dkt. no. 42]. Proceedings in this case are stayed pending arbitration. The parties are directed to file a joint status report regarding the status of arbitration proceedings on April 21, 2026. A telephonic status hearing is set for April 28, 2026 at 8:50 a.m., using call-in number 650-479-3207, access code 2305-915-8729.


Date: October 21, 2025

_____
MATTHEW F. KENNELLY
United States District Judge