IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| VINCENT AMBROSIA JR. and ROBERT HOUPT, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BLAZESOFT LTD., BLAZEGAMES, INC., SSPS LLC d/b/a SPORTZINO, SCPS LLC d/b/a ZULA CASINO, SOCIAL GAMING LLC d/b/a FORTUNE COINS,<br><br>*Defendants*. | Case No. 1:25-cv-01723<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFFS' MOTION TO RECONSIDER AND REVISE
ORDER GRANTING MOTION TO COMPEL ARBITRATION
OR, ALTERNATIVELY, TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW**

**INTRODUCTION AND BACKGROUND**

Plaintiffs Vincent Ambrosia Jr. and Robert Houpt respectfully request that this Court reconsider and revise—or, in the alternative, certify for interlocutory appeal—its October 21, 2025, Order granting Defendants' motion to compel arbitration, (dkt. 75). Plaintiffs had opposed the motion, arguing that the parties' arbitration agreement (including the delegation clause contained therein) was unenforceable for three reasons under Ontario law: it is barred by the Ontario Consumer Protection Act, it is unconscionable, and it is part of an illegal gambling contract. (*Id.* at 6–7.) This Court disagreed, holding first that the motion was governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"), which requires courts to enforce an arbitration agreement unless it is "null and void[.]" (*Id.* at 7 (quoting Convention, Art. II(3)).) The Court went on to hold that "null and void" under the Convention encompasses "only defenses that can be applied neutrally on an international scale[,]" which do not include Plaintiffs' Ontario law defenses. (*Id.* at 7, 9.) It is this second step that Plaintiffs ask the Court to reconsider (or, alternatively, to certify for interlocutory appeal). As explained below, looking to internationally accepted general common-law contract principles to determine whether an arbitration agreement is null and void under the Convention may be appropriate *when the parties have not selected what substantive law will govern their agreement*. Where (as here) however, the parties have included a choice-of-law clause in their agreement, the substantive law chosen by the parties governs the null and void inquiry under the Convention. *See* Restatement (Third) of U.S. Law of International Commercial and Investor-State Arbitration ("Restatement of Int'l Arb.") § 2.14(b)(1) ("[A] court determines whether an agreement is null and void [under the Convention] in accordance with . . . the law to which the parties have subjected the arbitration agreement[.]").

Consequently, this Court should revise its Order pursuant to Fed. R. Civ. P. 54(b) to hold that whether the parties' arbitration agreement is null and void under the Convention is determined by Ontario law and—for the reasons stated in Plaintiffs' prior opposition brief, (dkt. 55)—find the arbitration agreement null and void.[1] Alternatively, if this Court does not revise its Order, it should certify it for interlocutory review pursuant to 28 U.S.C. § 1292(b).

**ARGUMENT**

I. **THE ORDER SHOULD BE REVISED BECAUSE NULL AND VOID UNDER THE CONVENTION IS DETERMINED BY THE SUBSTANTIVE LAW SELECTED BY A PARTY CHOICE-OF-LAW CLAUSE.**

"Federal Rule of Civil Procedure 54(b) permits revision of a non-final order at any time before entry of final judgment." *Wilkins v. Just Energy Grp., Inc.*, No. 13 C 5806, 2019 WL 13251179, at *1 (N.D. Ill. Aug. 4, 2019) (Kennelly, J.) (citing *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985)).[2] This Court should reconsider and revise its ruling on the motion to compel arbitration to follow the Restatement approach: when parties have included a choice-of-law clause in their agreement, the determination of whether an arbitration clause is null and void under the Convention is governed by the parties' chosen substantive law. *See* Restatement of Int'l Arb. § 2.14(b)(1) & cmt. d.[3]

---

[1] For ease of reading, Plaintiffs will not continue to include the parenthetical qualifier "(including the delegation clause contained therein)" when referring to the arbitration agreement, though they continue to challenge both. As this Court correctly recognized, (dkt. 75, at 7), it is Plaintiffs' position that any agreement to arbitrate arbitrability (i.e., the delegation clause) is itself unenforceable—or, in the parlance of the Convention, null and void—for the same three reasons as the arbitration agreement more generally.

[2] Rule 54(b) reads, in relevant part: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

[3] While the Seventh Circuit has not explicitly adopted the Restatement of International Arbitration, several courts—including the Supreme Court—have turned to the Restatement for guidance on various international arbitration issues. *See, e.g.*, *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 60 (2014)

3

The Convention states that a court should not enforce an arbitration agreement if "it finds that the said agreement is null and void, inoperative or incapable of being performed." Convention, Art. II(3). The Convention, however, "fails to define those terms." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 441 (2020). Consequently, the Convention "does not set out a comprehensive regime" and "requires courts to rely on domestic law to fill the gaps[.]" *Id.* As one contemporaneous commentator noted, however, a "serious omission [in Article II(3) of the Convention] is the absence of any provision defining the law which governs the issue whether the arbitral agreement is 'null and void, inoperative or incapable of being performed.'" Leonard V. Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Award*, 70 Yale L.J. 1049, 1064 (1961); *see also* Restatement of Int'l Arb. § 2.14 Reporters' Note d. ("Neither Article II of the New York Convention nor § 2 of the FAA specifies the law applicable to the question of the validity or enforceability of the arbitration agreement.").

Relying on a line of cases from other circuits (the "*Bautista* line"), this Court held that "the Convention's null and void clause 'must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.'" (Dkt. 75, at 8 (quoting *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005)).) The foundation for that position is, as this Court correctly noted, "[t]he principal purpose of the Convention[, which] is to require uniform standards for the enforcement of arbitration agreements between parties who reside in different countries." (*Id.* at 9 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 (1974)).) In other words, because the point of the

---

(Roberts, J., dissenting); *Castro v. Tri Marine Fish Co. LLC*, 921 F.3d 766, 774 (9th Cir. 2019); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 70 (2d Cir. 2017); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 104 (D.C. Cir. 2015).

4

Convention is to make sure that a motion to compel arbitration is decided the same whether brought in a court of the United States, Canada, or any other signatory nation, all those courts—the argument goes—should apply a limited set of general common-law contract defenses rather than jurisdiction-specific defenses.

"[This] uniformity argument has some force where the parties have not selected the governing law." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004). "But where the parties have chosen the governing body of law, honoring their choice is necessary to ensure uniform interpretation and enforcement of that agreement and to avoid forum shopping." *Id.* Indeed, rather than attempting to divine and apply a general common-law standard of various contract defenses—a process one hopes, but can't guarantee, would be uniform across the courts of different signatory nations—any court in any nation asked to determine whether an arbitration agreement containing a choice-of-law clause was null and void under the Convention would look to the same substantive law to make that determination—the law chosen by the parties. *See id.* ("[A]pplying the parties' choice of law is the only way to ensure uniform application of arbitration clauses within the numerous countries that have signed the New York Convention."). Thus, consistent with the Restatement of International Arbitration, the Second Circuit has applied party choice-of-law clauses to determine which substantive law governs enforceability of an arbitration agreement under the Convention. *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 & n.3 (2d Cir. 2001) (Cudahy, J., sitting by designation) (applying New York and New Jersey law pursuant to choice-of-law clauses to determine whether arbitration agreements were void under Convention); *see also Motorola*, 388 F.3d at 51 (applying party-

chosen Swiss law to determine enforceability of arbitration agreement under Convention).[4]

Several of the cases in the *Bautista* line did not involve agreements containing choice-of-law clauses, and the line has been criticized more generally. *See, e.g.*, *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1293 (11th Cir. 2011) (Barkett, J., dissenting) ("*Bautista* is devoid of any reasoning or analysis. In limiting the scope of the 'null and void' clause to defenses that are capable of neutral international application, *Bautista* simply quotes the First Circuit's decision in *DiMercurio* as if this was a settled proposition of law."). Furthermore, it's not at all clear that the *Bautista* line's limitation of the null and void inquiry under the Convention to essentially four general common-law contract defenses is consistent with the Supreme Court's 2020 decision in *GE Energy*. As the Supreme Court explained, "Article II(3) contains no exclusionary language[.]" *GE Energy*, 590 U.S. at 440. "Given that the Convention was drafted against the backdrop of domestic law, it would be unnatural to read Article II(3) to displace domestic doctrines in the absence of exclusionary language." *Id.*

The Seventh Circuit has not directly addressed this issue, but the strong implication of its decision in *Certain Underwriters at Lloyd's London v. Argonaut Insurance Co.*, 500 F.3d 571 (7th Cir. 2007), is that a choice-of-law clause should govern the null and void inquiry under the Convention. In *Argonaut*, parties to an international agreement disputed how to calculate a particular arbitration-related deadline that ostensibly fell on a Sunday one day before a U.S.

---

[4] Admittedly, Second Circuit precedent on this issue "has been less than crystal clear." *FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc.*, 754 F. Supp. 2d 628, 634 (S.D.N.Y. 2010). A Second Circuit case decided after *Sphere Drake* and *Motorola*—but failing to mention (let alone discuss) either one—declined to apply an Egyptian choice-of-law clause to arbitrability issues under the Convention. *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 661–62 (2d Cir. 2005). "Thus, it appears that *Sarhank* counsels against honoring the choice-of-law clause in Convention cases when deciding the question of arbitrability, while *Motorola* counsels for honoring the clause." *FR 8 Singapore*, 754 F. Supp. 2d at 635 (choosing to follow *Motorola*); *see also Desarrolladora La Ribera v. Anderson*, No. 24-cv-67, 2024 WL 5186600, at *13 n.17 (S.D.N.Y. Dec. 20, 2024) ("The lower federal courts [in the Second Circuit] have frequently acknowledged the rocky precedential landscape on this point.") (quotations omitted, collecting cases).

holiday. One side argued that California law should apply; the other side argued for application of "principles of federal common law[.]" *Id.* at 573. The Seventh Circuit framed the issue as "[w]hat substantive law should be applied to interpret the terms of an arbitration agreement under the Convention when the parties have not included an explicit choice-of-law provision in their contract." *Id.* at 577. For guidance, the court looked to the decisions from other circuit courts addressing arbitrability or enforceability under the Convention, ultimately concluding that the "overarching federal concern with the uniformity of treatment of international arbitration agreements requires that the issue before us be resolved by a federal common law rule, rather than by a state rule of decision." *Id.* at 577–79.

As relevant here, however, *Argonaut* repeatedly reiterated that the parties' agreement there did not include a choice-of-law clause and qualified its holding accordingly. For example, when discussing other circuit courts' decisions in cases under the Convention, the *Argonaut* court noted that "when our sister circuits have been confronted with issues relating to agreements under the Convention—whether the question be arbitrability or enforcement or some other question—they appear to have resolved those issues by employing federal rules of decision, *particularly when the parties have not provided otherwise by their contract*." *Id.* at 577–78 (emphasis added). At the end of the string cite supporting that statement, *Argonaut* included a "*cf.*" cite to *Motorola* and emphasized that decision's key language about choice-of-law clauses. *Id.* at 578 ("Their uniformity argument has some force *where the parties have not selected the governing law*.") (quoting *Motorola*, 388 F.3d at 51, Seventh Circuit's emphasis). Ultimately, the *Argonaut* court made clear that the lack of a choice-of-law clause there was relevant:

> The interpretation of the portion of the arbitration clause related to the [parties' deadline dispute] seems to us very closely aligned with the other issues of interpretation of arbitration agreements under the Convention; such questions present an equally compelling case for a uniform federal rule *in the absence of*

7

*direction to use another law selected by the parties themselves*.

*Id.* at 578 (emphasis added). All of this suggests that had the parties' agreement in *Argonaut* included a choice-of-law clause, the Seventh Circuit would have used the chosen law to resolve the deadline dispute under the Convention. And given *Argonaut*'s statement that the deadline dispute there "seems to us very closely aligned with" the kinds of arbitrability and enforceability questions addressed by other circuit courts, *id.*, the Seventh Circuit seems likely to apply party-selected law to evaluate "null and void" under the Convention.

Here, the parties selected Ontario substantive law to govern their agreement. (Dkt. 43-13, § 13.1 ("All issues and questions concerning the construction, validity, interpretation and enforceability of this Agreement . . . are governed by, and construed in accordance with, the laws of Ontario, Canada[.]").) In light of the Supreme Court's recognition in *GE Energy* that domestic law is required to fill gaps in the Convention (such as its failure to define "null and void") and the strong implication from *Argonaut* that the Seventh Circuit would apply a party choice-of-law clause to determine *which* domestic law to use, Ontario law should—consistent with the Restatement of International Arbitration—govern whether the arbitration clause here is enforceable under the Convention. Plaintiffs therefore respectfully request that this Court reconsider and revise its original decision that applied the limited contract defenses available under the *Bautista* line of cases and instead address Plaintiffs' defenses under Ontario law. And because the arbitration clause is invalid and unenforceable under Ontario law for the reasons Plaintiffs argued in their response to Defendants' motion to compel arbitration, the arbitration clause is null and void under the Convention. (*See* dkt. 55, at 11 & n.6 (arguing that Defendants' arbitration clause is unenforceable under the Ontario Arbitration Act, but noting that even if the Convention applies instead, the arbitration clause is null and void for the same reasons)); *see also*

8

*Heller v. Uber Techs. Inc.*, 2019 CarswellOnt 1 (Can. Ont. Ct. App.) (WL) ¶ 21 (noting that court would reach the same conclusion—that arbitration agreement was unenforceable because it was both invalid under an Ontario statute and unconscionable—whether Ontario Arbitration Act or Convention applied), *aff'd sub nom. Uber Techs. Inc. v. Heller*, 2020 SCC 16 (Can.); *Transp. N. Am. Express Inc. v. New Solutions Fin. Corp.*, 2004 SCC 7, ¶ 6 (Can.) ("[C]ontracts so objectionable that their illegality will taint the entire contract . . . [such as] contracts that have a criminal object should be declared void *ab initio*.").[5]

## II. IF THE COURT DOES NOT REVISE ITS ORDER, IT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY REVIEW.

In the alternative, if the Court decides not to revise its prior order, Plaintiffs respectfully request that it certify the order for interlocutory review under 28 U.S.C. § 1292(b). "Section 1292(b) authorizes a district court to certify for interlocutory appeal an order that 'involves a controlling question of law as to which there is substantial ground for difference of opinion' if 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *A.D. by & through Serrano v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 WL 10612609, at *1 (N.D. Ill. Dec. 11, 2016) (Kennelly, J.) (quoting 20 U.S.C. § 1292(b)). Those requirements are satisfied here.[6]

---

[5] Alternatively, if the Court maintains that only internationally accepted general common-law contract defenses apply despite the Ontario choice-of-law clause, it should still consider Plaintiffs' unconscionability argument. *See* Restatement of Int'l Arb. § 2.14 cmt. a ("The grounds for finding an arbitration agreement null and void include fraud, duress, mistake, illegality, *and unconscionability*.") (emphasis added); Fabien Gélinas & Zackary Goldford, *Re-Thinking Unconscionability: Arbitration Agreements in International Consumer, Employment and "Gig" Economy Contracts*, 2023 Sing. J. Legal Stud. 1, 2, 6–10 (2023) (explaining that many common law jurisdictions invalidate arbitration agreements for unconscionability).

[6] The Seventh Circuit has also identified "a nonstatutory requirement: the petition must be filed in the district court within a reasonable time after the order sought to be appealed." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675–76 (7th Cir. 2000). The order sought to be appealed here was entered on October 21, 2025, and this petition was filed on November 17, 2025, a reasonable time later. *See Boim*

The relevant question here—does a contractual choice-of-law clause provide the substantive law to determine whether an arbitration clause is null and void under the Convention—is a question of law. It is "an abstract legal issue"—"something the court of appeals could decide quickly and cleanly without having to study the record[.]" *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000). It is also controlling because this Court's answer to the question—that null and void under the Convention is determined by reference to a limited number of general common-law contract defenses rather than by Ontario law pursuant to the parties' choice-of-law clause—"ended litigation of the case in court." *A.D.*, 2016 WL 10612609, at *1 (certifying order granting motion to compel arbitration for interlocutory review); *Gupta v. Morgan Stanley Smith Barney*, No. 17 C 8375, 2018 WL 8787623, at *1 (N.D. Ill. Oct. 17, 2018) (Kennelly, J.) (same).

There is also substantial ground for difference of opinion. As discussed above, the Restatement of International Arbitration states that null and void is determined by party-chosen law, the Second Circuit has applied party choice-of-law clauses to enforceability issues under the Convention, and the strong implication from *Argonaut* is that the Seventh Circuit would do so too. The Second Circuit precedent is not uniform however, *see supra* note 3, and some of the cases in the *Bautista* line narrowly applying general common-law contract defenses involved agreements that included a choice-of-law clause. *See, e.g.*, *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 361 (4th Cir. 2012). Additionally, the Ninth Circuit appears to have acknowledged the contrasting approaches in this area without taking a position of its own. *See, e.g.*, *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008) (questioning whether

---

v. *Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1008 (7th Cir. 2002) (finding petitions for interlocutory review filed 36 days after order were reasonably timely).

unconscionability can render an agreement null and void under the Convention—citing *Bautista*—but going on to evaluate the defense under Florida state law pursuant to the parties' choice-of-law agreement). As the Seventh Circuit has noted, "[t]here are few more tangled issues than choice of law in arbitration cases." *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 848 (7th Cir. 1995). The current case law—most of it decided before *GE Energy*—provides a wide range of decisions with varying degrees of consideration. Interlocutory review here would provide guidance and clarity on this complicated issue for all the courts in this circuit. Indeed, the issue appears likely to arise imminently in another case in this district. *See* Mem. Supp. Defs.' Mot. Compel Arbitration, *Mayhone v. MW Servs. Ltd.*, No. 25-cv-08956, (dkt. 37), (N.D. Ill. Nov. 6, 2025) (moving to compel arbitration under Convention of similar gambling dispute involving defendants with Gibraltar choice-of-law clauses, citing this Court's order and the *Bautista* line of cases).

Finally, immediate appeal may materially advance the ultimate termination of the litigation. As this Court has repeatedly recognized, certifying issues dispositive to motions to compel arbitration immediately, "rather than later after an arbitration proceeding is over and done with," satisfies this element. *A.D.*, 2016 WL 10612609, at *1; *Gupta*, 2018 WL 8787623, at *1.

## CONCLUSION

Plaintiffs respectfully request that this Court reconsider and revise its October 21, 2025, Order so as to deny Defendants' motion to compel arbitration or, in the alternative, that this Court certify the Order for interlocutory review.

Respectfully Submitted,

**VINCENT AMBROSIA JR. and ROBERT HOUPT,** individually and on behalf of all others similarly situated,

Dated: November 17, 2025

By: */s/ Roger Perlstadt*
One of Plaintiffs' Attorneys

J. Eli Wade-Scott
ewadescott@edelson.com
Michael Ovca
movca@edelson.com
Hannah Hilligoss
hhilligoss@edelson.com
Ari J. Scharg
ascharg@edelson.com
Roger Perlstadt
rperlstadt@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the putative class*